UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY EILAND, | CASE NO. 1:10CV2436 |
| Plaintiff, | |
| | MAGISTRATE JUDGE |
| v. | GEORGE J. LIMBERT |
| MICHAEL J. ASTRUE, | |
| COMMISSIONER OF | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY, | |
| Defendant. | |

Shirley Eiland ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Supplemental Security Income ("SSI") and Widow's Insurance Benefits ("WIB"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision:

## I.    PROCEDURAL AND FACTUAL HISTORY

On June 13, 2005, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and SSI alleging disability beginning January 1, 2004. ECF Dkt. #11-4 at 5. After denials at the initial and reconsideration levels, Plaintiff filed a notice of hearing before an Administrative Law Judge ("ALJ") and the ALJ found that while Plaintiff suffered from the severe impairments of chronic ankle pain, low back pain, depression, borderline intellectual functioning and obesity, she was not under a disability from January 1, 2004 through July 25, 2007, the date of his decision. *Id*. at 7, 16. Plaintiff did not appeal this decision. ECF Dkt. #11-2 at 13.

On October 31, 2007, Plaintiff filed applications for SSI, DIB and WIB, alleging disability beginning January 1, 2004 due to degenerative arthritis, depression, and diabetes. ECF Dkt.#11-5 at 2-23; ECF Dkt. #11-8 at 7. The SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt. #11-5 at 2-23.

Plaintiff filed a request for an administrative hearing and on December 11, 2009, an Administrative Law Judge ("ALJ") conducted an administrative hearing where Plaintiff was

represented by counsel. ECF Dkt. #11-3. At the hearing, the ALJ heard testimony from Plaintiff and Thomas Nimberger, a vocational expert ("VE"). *Id*. On December 30, 2009, the ALJ issued a Notice of Decision - Unfavorable. ECF Dkt. #11-2 at 13-28. Plaintiff filed a request for review, which the Appeals Council denied. ECF Dkt. #11-2 at 2-9.

On October 26, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On March 1, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #13. On May 19, 2011, Defendant filed his brief on the merits. ECF Dkt. #16.

**II**. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

At the hearing, Plaintiff agreed to amend her onset date to July 26, 2007 and the ALJ dismissed Plaintiff's DIB claim since the earlier decision finding her not disabled was rendered after Plaintiff's date last insured. ECF Dkt. #11-3 at 7. Neither party objects to this determination.

In his decision, the ALJ determined that Plaintiff suffered from degenerative disc disease ("DDD"); major depressive disorder ("MDD"); obesity; bilateral hip osteoarthritis; and dermatophytosis of nail, all of which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). ECF Dkt. #11-2 at 16. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 17.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work, with lifting and/or carrying up to ten pounds occasionally and ten pounds frequently; standing and/or walking up to six hours per eight-hour workday; sitting a total of six hours during an eight-hour workday; occasional climbing, but no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; no exposure to hazards or driving, simple, repetitive tasks; no fast-paced production work; and occasional interaction with coworkers, but no direct interaction with the general public. ECF Dkt. #11-2 at 18.

Based upon the VE's testimony and the RFC that he had determined, the ALJ found that Plaintiff could not perform her past relevant work as a machine tender, clothes handler, truck unloader, or retail cashier, but she could perform representative jobs existing in significant numbers in the national economy, such as an cafeteria attendant, mail sorter, and office cleaner. ECF Dkt.

#11-2 at 22-23.  The ALJ therefore determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to DIB, SSI, or WIB.  *Id.* at 23.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v.*

*Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.  ANALYSIS

### A.  TREATING PHYSICIAN'S OPINIONS

Plaintiff first asserts that the ALJ erred in failing to give controlling weight to the opinions of Dr. Berrones, her treating psychiatrist at Metrohealth Medical Center. ECF Dkt. #13 at 7-10. For the following reasons, the Court finds no merit to Plaintiff's assertion.

On September 24, 2008, Dr. Berrones completed a medical source assessment of Plaintiff's mental activities. ECF Dkt. #11-18 at 40. Dr. Berrones indicated that Plaintiff was not able to perform any of the designated tasks or functions identified in the form on a regular, reliable and sustained schedule. *Id*. The tasks and functions included twenty identified tasks or functions with four broad categories of understanding and memory, sustained concentration and persistence, social interaction and adaptation. *Id*. at 40-41. Dr Berrones explained that due to her major recurrent severe depressive disorder, Plaintiff could not function independently, was unable to complete tasks or find places on her own. *Id*. at 41. Dr. Berrones further concluded that Plaintiff would not care for herself, such as bathing or eating, if she was not continuously reminded to do so. *Id*. The doctor explained that Plaintiff required continual follow-up and assistance. *Id.*

On March 20, 2009, Dr. Berrones penned a letter "[t]o whom it may concern," indicating that Plaintiff needed "social security disability assistance" due to her long history of MDD with psychotic features. ECF Dkt. #11-20 at 4. Dr. Berrones noted that Plaintiff has severe depression with suicidal ideations and prior suicide attempts and inpatient hospitalization for stabilization and treatment. *Id*. Dr. Berrones further explained that Plaintiff needed frequent follow up for

-4-

monitoring of her condition and treatment. *Id.* She further concluded that she was "unable to maintain gainful employment due to her frequent bouts of depression and psychosis." *Id.*

On May 22, 2009, Dr. Berrones completed a mental functional capacity assessment indicating that she had last examined Plaintiff on April 21, 2009 and found that she was unemployable for at least twelve months or more due to major severe recurrent depression, with prior suicide attempts and psychiatric hospitalizations. ECF Dkt. #11-22 at 17-18. Dr. Berrones found that Plaintiff was moderately limited in: remembering locations and work-like procedures; understanding, remembering and executing very short and simple instructions; remembering detailed instructions; making simple work-related decisions; interacting appropriately with the general public; and in asking simple questions or for assistance. *Id.* at 17. Dr. Berrones found Plaintiff markedly limited in her abilities to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule or to regularly attend and be punctual; work in proximity to others without being distracted by them; respond appropriately to changes in the work setting; and to be aware of normal hazards and take appropriate precautions. *Id*. Dr. Berrones further found Plaintiff extremely limited in her abilities to: complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and to adhere to basic standard of neatness and cleanliness; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. *Id*.

As support for her findings, Dr. Berrones indicated Plaintiff's diagnosis of major severe recurrent depression, with prior suicide attempts and psychiatric hospitalizations. ECF Dkt. #11-22 at 17-18. She noted that Plaintiff required frequent monitoring of her mood and thought processes because her depression could become psychotic. *Id.* at 18. Dr. Berrones further explained that Plaintiff required daily use of antidepressants and antipsychotic medications, which could cause sedation and difficulty in maintaining focus. *Id.*

An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). In other words, an ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985), and substantial evidence does not contradict it, *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir.1987). If the ALJ finds the treating physician's opinion fails to meet these two conditions, he may discredit the opinion as long as he articulates a reasoned basis for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987). "When deciding if a physician's opinion is consistent with the record, the ALJ may consider evidence such as the claimant's credibility, whether or not the findings are supported by objective medical evidence, as well as the opinions of every other physician of record." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 442, 2010 WL 3199693, at **6 (6th Cir. Aug. 12, 2010), unpublished, citing SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *Hickey-Haynes v. Barnhart*, 116 Fed.Appx. 718, 726 (6th Cir.2004) (An ALJ may "consider all of the medical and nonmedical evidence.")(quotation marks and citation omitted)).

If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2) (i), (d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her

-6-

case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004), quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544.

The Court finds that the ALJ in this case reasonably weighed Dr. Berrones' opinions and articulated proper reasons for not attributing controlling weight to them. He did not "merely cast aside the treating physician's opinion without explanation." *Gaskin v. Comm'r of Soc. Sec*., No. 07-1130, 280 Fed. App'x 472, 2008 WL 2229848, at *4 (6th Cir. May 30, 2008), unpublished. (no error found when ALJ failed to defer to treating physician's opinion when opinion regarding claimant being disabled is reserved to Commissioner and opinion of physician regarding claimant's condition was contradicted by other evidence in the record, including physician's own progress notes and findings of another physician.). The ALJ cited Dr. Berrones' findings that Plaintiff was moderately to extremely limited in all functional areas, Plaintiff was unable to function independently, and she was unable to maintain gainful employment due to her mental conditions. ECF Dkt. #11-2 at 21. However, the ALJ indicated that he was giving Dr. Berrones' opinions less than controlling weight because her progress notes failed to support her conclusions as to the severity of Plaintiff's limitations. *Id*. The ALJ explained that Dr. Berrones notes documented that Plaintiff's mental status was stable, her concentration was sustained, and her memory was good. *Id*. The ALJ also indicated he was giving Dr. Berrones' opinions weight to the extent that they were consistent with the mental RFC that he determined. *Id*.

The ALJ is correct that Dr. Berrones' progress notes in the record do not support her extreme opinions. The ALJ pointed to Dr. Berrones' progress notes in which she found that Plaintiff's

mental status was stable, her concentration was sustained and her memory was good. ECF Dkt. #11-2 at 21, citing ECF Dkt. #11-28. The progress notes in this exhibit show that Plaintiff treated with Dr. Berrones on November 26, 2008 and reported to Dr. Berrones that she was doing well, she had an appetite, and her mood, sleep and energy were stable. ECF Dkt. #11-28 at 6. She indicated that the medications were helpful and she reported no adverse effects from them. *Id.* Upon examination, Dr. Berrones found Plaintiff to be cooperative, calm and oriented, with logical, organized thought processes, no abnormal or psychotic thoughts, fair insight and judgment, good recent and remote recall, sustained attention span and concentration, and in stable condition. *Id.* at 6-7.

Plaintiff treated with Dr. Berrones again on December 23, 2008 and was in "okay spirits." ECF Dkt. #11-28 at 14. She reported being irritable, but attributed it to missing doses of her medication due to a mailing address mix-up in sending the medication. *Id*. Plaintiff indicated that she was otherwise doing well and her mood, appetite, sleep and energy were "okay." *Id.* The mental status examination showed that Plaintiff was calm, cooperative and oriented, with logical, organized thought processes, no abnormal or psychotic thoughts, good insight and judgment, good recent and remote recall, sustained attention span and concentration, and in stable condition. *Id*. at 14-15.

Similar findings are contained in Dr. Berrones January 27, 2009 progress notes. ECF Dkt. #11-28 at 17. Plaintiff reported that her mood had been low because she missed some medication doses, but her mood had improved when she took her medications regularly. *Id.* Plaintiff reported that her sleep, appetite, energy, concentration and motivation had improved. *Id*. Dr. Berrones mental status examination showed that Plaintiff was calm, cooperative and oriented, with logical, organized thought processes, no abnormal or psychotic thoughts, good judgment and insight, good recent and remote recall, sustained attention span and concentration, and in stable condition. *Id*. at 17-18.

Plaintiff also treated with Dr. Berrones on July 3, 2009 and Plaintiff reported feeling more depressed, but her sleep, concentration, and energy were stable. ECF Dkt. #11-28 at 12. Plaintiff had reported that she had not been taking her medications because she ran out and the patient assistant forms to help pay for the medications were returned to her because information was

missing on them. *Id.* Plaintiff stated that she would buy her own medications for now. *Id.* Plaintiff reported to Dr. Berrones that she was "otherwise stable" except for some disagreements with her daughter. *Id.* Upon examination, Dr. Berrones found that Plaintiff was calm, cooperative and oriented, with logical, organized thoughts, no abnormal or psychotic thoughts, fair judgment and insight, good recent memory and remote recall, and sustained attention span and concentration. *Id.* at 13.

Dr. Berrones also treated Plaintiff on August 2, 2009 for medication follow-up and supportive psychotherapy. ECF Dkt. #11-28 at 3. Dr. Berrones reported that Plaintiff stated that she was doing "okay" for the most part. *Id.* Dr. Berrones found upon examination that Plaintiff was calm, cooperative and oriented, with logical thought, and no abnormal or psychotic thoughts. *Id.* She found Plaintiff's insight, judgment, recent and remote memory to be good and her attention span and concentration to be sustained. *Id.* at 3-4.

The ALJ's properly articulated and applied the treating physician rule and substantial evidence supports his application of the rule. As found by the ALJ, Dr. Berrones' progress notes were inconsistent with her extreme findings and limitations in her opinions. While Plaintiff argues that Dr. Berrones' findings that Plaintiff was "doing well" or was "stable" do not establish that Plaintiff can perform full-time work, the consistent mental examination findings of Dr. Berrones that Plaintiff's mental status was normal, with fair judgment and insight, good memory and recall, and sustained attention span and concentration, offer sufficient evidence to lead the ALJ to give less than controlling weight to Dr. Berrones' opinions.

Moreover, as also found by the ALJ, other evidence of record fails to support Dr. Berrones' opinions. The ALJ cited to the progress notes of Dr. Austin, a doctor who treated Plaintiff at MetroHealth Center before Dr Berrones. ECF Dkt .#11-2 at 20, citing ECF Dkt. #11-17. Dr. Austin treated Plaintiff on August 3, 2007 and noted Plaintiff's frustrated mood, but indicated that Plaintiff's mental status examination showed that she was stable, and was cooperative and oriented, with logical and organized thought processes, no abnormal or psychotic thoughts, fair judgment and insight, good recent and remote memory and sustained attention span and concentration. ECF Dkt. #11-17 at 18. On October 17, 2007, Dr. Austin's progress notes indicated the same. *Id.* at 20.

-9-

Plaintiff indicated that she felt "fine" and stated that Wellbutrin and Trazodone were helpful. *Id.* Dr. Austin further reported on January 21, 2008 that Plaintiff stated that she had been doing well until a family situation arose which upset her. *Id.* at 22. However, Plaintiff reported that the medications were helping her and "she was not tearful and without motivation as she had been previously." *Id.* The mental examination findings were the same as the previous sessions, with Plaintiff cooperative, oriented, with logical, organized thoughts, no abnormal or psychotic thoughts, and fair judgment and insight, good memory, sustained attention span and concentration, and her report of feeling "fine." *Id.* at 22-23.

Plaintiff had gone to the emergency room on February 19, 2008 due to her doctor's concern over her complaints of increasing depression and thoughts of suicide. ECF Dkt. #11-18 at 7. Plaintiff reported that she had increasing depression and a desire to kill herself. *Id.* She was taking Wellbutrin and was supposed to be taking Xanax, but could not afford the medication. *Id.* Plaintiff was transferred to NorthCoast Behavioral Health Center for further evaluation and treatment. *Id.* at 9. She was hospitalized until February 25, 2008 and additional medications were administered which stabilized her condition. *Id.* She was discharged with diagnoses which included major moderate recurrent depression without psychotic features, marijuana abuse, and Type 2 diabetes. ECF Dkt. #11-13 at 47-48.[1]

However, on March 13, 2008, Plaintiff followed up with Dr. Austin and reported to her that she had smoked marijuana prior to being admitted to the emergency room in February 2008. ECF Dkt. #11-18 at 28. Plaintiff further indicated that she was "hopeful about her situation and she wants to continue working on improving her mental and physical health." *Id.* Plaintiff had indicated that she received a dog for her birthday, which made things nice and she liked coming home to someone. *Id.* She had lost five pounds since her diabetes diagnosis and she was trying to obtain additional money from her husband's pension to help her financial situation. *Id.* Upon examination, Dr. Austin

---

[1] The Court notes that all of page 46 and part of page 47 at ECF Dkt. #11-13 is a discharge narrative summary that is stamped with Plaintiff's name and date of birth, but contains information and diagnoses for a white male with bipolar disorder. *Id.* at 46. The latter part of page 47 appears to be Plaintiff's discharge summary, although the "Assessment" part uses a male pronoun in the first sentence. *Id.* at 47.

found Plaintiff to be cooperative, friendly and oriented, with organized and logical thought processes, no abnormal or psychotic thoughts, fair judgment and insight, good memory and sustained attention span and concentration. *Id*. at 28-29. Plaintiff reported feeling "better." *Id*. at 29. Dr. Austin indicated that Plaintiff was doing better since her hospital discharge and she had been trying to better deal with stress. *Id.*

Dr. Austin's April 21, 2008 progress notes are similar to those of March 13, 2008. ECF Dkt. #11-18 at 35. Plaintiff indicated that she had been doing well and was helping her granddaughter. *Id.* Plaintiff indicated that she was continuing to monitor her diet, had lost weight, and was feeling better and increasing her activity level slowly. *Id*. Plaintiff reported feeling hopeful and not as worried as in the past. *Id.* Upon examination, Dr. Austin found Plaintiff to be cooperative, friendly and oriented, with organized and logical thought processes, no abnormal or psychotic thoughts, fair judgment and insight, good memory and sustained attention span and concentration. *Id*. Plaintiff reported feeling "good." *Id*. at 35-36. Dr. Austin indicated that Plaintiff was doing well and had continued to improve her management of diabetes and depression. *Id.* at 36.

Plaintiff also asserts that the ALJ downplayed her June 2009 hospitalization for suicidal ideation and used his own medical judgment regarding the hospitalization because he attributed it to her being intoxicated. ECF Dkt. #13 at 9. A review of the ALJ's decision and the medical records surrounding Plaintiff's June 28, 2009 emergency room visit contradict Plaintiff's assertion. The ALJ cited to the June 28, 2009 emergency room visit, indicating that Plaintiff's daughter took Plaintiff to the emergency room after Plaintiff suggested an intent to hurt herself. ECF Dkt. #11-2 at 20. The ALJ indicated that hospital records showed that Plaintiff's alcohol levels were significantly elevated and her symptoms resolved after she sobered up and she was released in stable condition. *Id*.

The hospital records support the ALJ's findings and belie Plaintiff's assertion that the ALJ substituted his own judgment for that of the doctor. The chief complaint identified in the emergency room record is "[A]lcohol intox, depression." ECF Dkt. #11-24 at 3. The record indicates that Plaintiff was "acting antisocial by swearing and yelling" and that she had to be sedated and tied down. *Id.* The doctor indicated that Plaintiff was monitored through the night and her alcohol level

came back significantly elevated. *Id*. The doctor believed that the "combination of family issues and her alcoholic cause" resulted in the hospitalization. *Id.* He noted that Plaintiff adamantly denied wanting to hurt herself and she was acting appropriately once sober. *Id.*

For these reasons, the Court finds no merit to Plaintiff's assertion that the ALJ erred in failing to give controlling weight to Dr. Berrones' opinions.

### B. **STEP THREE ANALYSIS - MEETING A LISTING**

Plaintiff also asserts that the ALJ lacked substantial evidence to support his finding that her conditions failed to meet a Listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. ECF Dkt. #13 at 10-11. Plaintiff contends that the ALJ "used his own evaluation of the evidence without using either the treating psychiatrist or a Medical Expert at the hearing." *Id*. at 11. Plaintiff asserts that the ALJ was therefore "playing doctor," and thus committed reversible error because caselaw from this District holds that ALJs cannot exercise their independent medical expertise in determining a claimant's disability status. *Id*., citing *Arena v. Comm'r*, 5:07CV766.

Plaintiff fails to inform the Court of the Listing or Listings that she believes that her impairments meet. In the third step of the analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs*., 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that her impairment meets all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d). An impairment that meets only some of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff also fails to cite to the Court the opinions of the treating physician or physicians that she believes the ALJ disregarded. The only evidence that Plaintiff offers in support of her assertion regarding meeting the Listings is that the ALJ failed to "comment on any of the opinions expressed by her treating doctors who indicated that she was not functioning on her own and needed to be reminded to bathe and to eat." ECF Dkt. #13 at 10. Looking to Plaintiff's other assertions of ALJ error, Plaintiff must be asserting that the ALJ disregarded the opinions of Dr. Berrones, Plaintiff's

-12-

treating psychiatrist, who opined in numerous letters and reports that Plaintiff could not maintain gainful employment due to her psychiatric conditions.

Moreover, the Sixth Circuit Court of Appeals caselaw "does not require a heightened articulation standard at Step Three of the sequential evaluation process." *Marok v. Astrue*, 2010 WL 2294056, at *3 (N.D. Ohio Jun 3, 2010), unpublished, citing *Bledsoe v. Barnhart*, No. 04-4531, 2006 WL 229795, at *411 (6th Cir. Jan.31, 2006) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.1986)). However, in order to conduct a meaningful review, the ALJ must make it sufficiently clear in his or her decision the reasons for the determination in order for the Court to conduct a meaningful review. *Marok*, 2010 WL 2294056, at *3 (citations omitted).

The Court finds that the ALJ conducted a sufficient review in his Step Three analysis. The ALJ identified Listing 1.04 for Plaintiff's spine condition and Listing 12.04 for Plaintiff's mental impairments. ECF Dkt. #11-2 at 17. He thereafter reviewed the specific criteria of those Listings and cited to pertinent portions of the record which supported his analysis finding that Plaintiff's conditions did not meet those Listings. *Id.* Portions of the record to which he cited included progress notes from Dr. Berrones and a doctor's report regarding Plaintiff's spine condition. *Id.* Thus, it appears that the ALJ did not rely on his own lay opinions and in fact considered the findings and conclusions of Plaintiff's treating physician and psychiatrist.

Further, contrary to Plaintiff's assertion in her brief, the ALJ did consider Dr. Berrones' opinions and cited directly to the exhibit that contained her opinions. ECF Dkt. #11-2 at 17, citing ECF Dkt. #11-18, ECF Dkt. #11-21. Moreover, the ALJ properly considered, evaluated, articulated and supported his decision to give less than controlling weight to Dr. Berrones' opinions, finding that her opinions were not supported by her own treatment notes nor by other evidence of record, as explained above. In addition, although an ALJ considers medical source opinions from treating physicians in determining whether a claimant's impairments meet or equal a Listing, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 416.927(e)(2). Moreover, the ALJ is not required to call a medical expert in every case as the regulations provides that an ALJ "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals

the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. §416.927(f)(2)(iii). Here, as Defendant points out, the ALJ had before him a record of over 600 pages, with five years of treatment notes and treating physician opinions, and he had two opinions from state agency psychologists that found that Plaintiff's impairments did not meet or equal a Listing. Thus, sufficient evidence existed in order for the ALJ to make his decision at Step Three without the need for a medical expert and thus the ALJ properly used his discretion in determining to proceed without a medical expert.

### C.    STEP FIVE

Finally, Plaintiff asserts that the ALJ failed to meet his burden at Step Five of the sequential analysis and lacked substantial evidence to find that work existed that Plaintiff was capable of performing. ECF Dkt. #13 at 12. Specifically, Plaintiff argues that "abundant evidence existed that not only would Eiland be off task at least 20% of the time if not more, there was credible evidence from her treating physician that she was incapable of extended standing and walking." *Id*. at 13. Plaintiff complains that the ALJ's hypothetical person presented to the VE was inaccurate because it did not portray these limitations, "which was far closer to the actual condition of Eiland than the hypothetical question was." *Id*. at 13-14.

At the hearing before the ALJ, the VE testified that someone who was 20% off task, whether off task due to absence from work or not paying attention to her work, would be unemployable. ECF Dkt. #11-3 at 29-30. The VE testified that a person who was off task below 20%, either through absence or punctuality, may or may not still be working, but being off task 10% is reasonable as it is normally built in by employers through the use of vacation time, sick time, taking breaks during the workday, and other methods. *Id*. at 28. In determining Plaintiff's mental RFC, the ALJ did not incorporate a 20% off task limitation. He did limit Plaintiff to limited light work with simple repetitive tasks, no fast-paced production work, occasional interaction with coworkers, and no direct interaction with the general public. *Id*. at 18.

"It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993) (citation omitted);

-14-

*see also Parks v. Soc. Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. Mar.15, 2011) (citations omitted) ("Hypothetical questions . . . need only incorporate those limitations which the ALJ has accepted as credible."). Here, no doctor opined that Plaintiff would be off task twenty percent of the time. While counsel at the hearing referenced limitations opined by Dr. Berrones that Plaintiff would have marked or extreme limitations in punctuality or completing a normal workday or workweek without interruption from psychologically based symptoms, the ALJ was not required to incorporate these limitations because he concluded that Dr. Berrones' opinions were unsupported by her own treatment notes, the other medical evidence, and the other evidence of record. ECF Dkt. #11-2 at 21. As explained above, the ALJ properly articulated the treating physician rule and applied it. He cited Dr. Berrones' treatment notes showing that Plaintiff had consistent mental examination findings showing a normal mental status, with fair judgment and insight, good memory and recall, and sustained attention span and concentration. *Id*. He further reviewed the notes of Dr. Austin's treatment with Plaintiff which showed Plaintiff to be mentally stable, cooperative and oriented, with logical and organized thought processes, no abnormal or psychotic thoughts, fair judgment and insight, good recent and remote memory and sustained attention span and concentration. ECF Dkt. #11-17 at 18. Moreover, the ALJ noted that Plaintiff had kept regular medication management appointments and psychotherapy appointments and her mental status had continued to improve and stabilize upon the consistent use of her medications. ECF Dkt. #11-2 at 20. The ALJ therefore had an adequate basis for rejecting counsel's hypothetical person which included a 20% off task limitation.

      The same analysis applies to Plaintiff's assertion of her inability to walk or stand for extended periods of time. In his decision, the ALJ limited Plaintiff to light work with the ability to sit, stand and/or walk up to six hours per eight-hour workday. ECF Dkt. #11-2 at 18. He correctly found that Plaintiff's allegations as to the limitations from her physical impairments were not supported by the medical evidence and no evidence supported a more restrictive standing or walking limitation than he determined. *Id.* at 19. He cited to diagnostic imaging studies showing only mild degenerative changes in the lumbar spine and degenerative spurring at the L5-S1 level. *Id.* at 19, citing ECF Dkt. #11-10 at 2 (3/26/07 x-ray showing mild degenerative changes in lumbosacral

spine). The ALJ also cited to Plaintiff undergoing injections and epidurals with reports of improvement from the injections and medications. ECF Dkt. #11-2 at 19, citing ECF Dkt. #11-27 at 2 (10/12/09 bilateral SI joint injection), 4 (10/6/09 epidurals), 10 (9/3/09 epidural); 12 (7/27/09 epidural). The ALJ further relied upon a letter from Dr. Yue indicating that Plaintiff's spine x-rays "look pretty good" as they revealed a "very mild twisting of the spine called scoliosis," a deteriorated disc and a normal sacroiliac joint. *Id.*, citing ECF Dkt. #11-22 at 16. Dr. Yue had diagnosed Plaintiff with mild degenerative lumbar disease and opined that Plaintiff's back pain would improve if she kept doing back exercises and lost some weight. *Id.* The ALJ also cited to the state agency physician's findings that Plaintiff could perform light work, which included sitting, standing and/or walking up to six hours per workday, although he found that Plaintiff had nonexertional limitations not found by the state agency physician that precluded a full range of light work. ECF Dkt. #11-2 at 20-21, citing ECF Dkt. #11-13 at 38-45.

Thus, the ALJ appropriately based his hypothetical on the limitations that he found supported by the record as a whole. *See Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir.1990) ("If the hypothetical question has support in the record, it need not reflect the claimant' unsubstantiated complaints."). Accordingly, Plaintiff's argument lacks merit.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and dismisses Plaintiff's complaint in its entirety with prejudice.

DATE: February 2, 2012                 */s/George J. Limbert*
                                                              GEORGE J. LIMBERT
                                                              UNITED STATES MAGISTRATE JUDGE